Morning, Your Honours. My name is Hung Ta from HGT Law on behalf of the defendant and appellant, Sun Hung Kai Strategic Capital, Ltd. Your Honours, can I reserve three minutes for my reply and 12 minutes for the main argument? All right. I'll try to help you out, but keep your eye on the clock as well, please. Thank you, Your Honours. May it please the Court. Your Honours, this appeal turns on two propositions, both clearly and expressly stated by the California Supreme Court. The first proposition is that under the principle of equitable indemnity, a strict liability tort visa can get equitable indemnity from a negligent tort visa. The second proposition is that under California law, the tort of conversion is a strict liability tort. Now, with respect to the first proposition, Your Honours, the Supreme Court, the California Supreme Court, in the case Safeway Stores v. Neskart, stated and held for the first time that a strict liability tort visa may seek indemnity from a negligent tort visa. And it based its decision on the equitable considerations, specifically the relative mental states of the parties, the relative culpabilities, if you will. The California Supreme Court said that if it made sense for a negligent tort visa to seek equitable indemnity from another negligent tort visa, it made sense for a strict liability tort visa, who may not even be negligent, to also seek equitable indemnity from a negligent tort visa. So, Councillor, is there any California authority that squarely addresses whether equitable indemnity is available for conversion? There is not, Your Honour. So if there's not, what is your position on certifying this to the California Supreme Court to tell us what to do? Your Honour, our answer is this. First of all, we think that the cases, the California Supreme Court cases, are unambiguous on these two propositions. Well, but they're not unambiguous on whether equitable indemnity is available for conversion. Not on that specific point, Your Honour. And that's the specific point we have here today, right? That's correct, Your Honour. And what you're asking me to do is take situations like in Voris or like in Perlisette or like in Regent and, if you will, move them over and make sure that that's the way it goes in this particular instance as well. Then I go to Collin, which was a court of appeals case. I go to Phelps, which is also a court of appeals case, and they're just the opposite. And they say instead, I shouldn't be making conversion available to employ the doctrines of equitable immunity or, excuse me, indemnity. So in that instance, I said to myself, I didn't know whether they really talked to me about that, so I want to ask them, why not send it over there? Because you said that OB 28, Note 9, that the panel may also consider it appropriate to certify the issue. So that's why I'm asking you. And that is our fallback position, Your Honour. Our primary position is that the cases are clear because these two propositions are clear. The cases are not clear about this issue. The cases are clear. If you want to adopt the theories involved in the cases I mentioned first, mainly Boris, to this, you can find it, right? Right, Your Honour, and our fallback position is that if the court believes that it's unclear, I think the appellees have to make this argument to the California Supreme Court, and we should certify this question. Tell us and talk a little bit about Boris and why the conclusion about strict liability in that context of – for unpaid wages should translate more broadly into this novel concept of equitable indemnification. Sure, Your Honour. If you look at the facts of Boris, in Boris the California Supreme Court was presented with the question of whether to extend the principle of equitable – to extend conversion, the claim of conversion to unpaid wages. And if you look at what the Supreme Court was dealing with, it was extremely vexed by the fact that conversion is a strict liability tort. That was what Boris was so concerned about, that if you extend a strict liability tort like conversion to unpaid wages, it could create all sorts of public policy ramifications. And so based on that, the California Supreme Court said we're going to pull back, conversion should not be applied as a strict liability tort to unpaid wages. But the underlying concern was the fact that conversion is a strict liability tort. And this wasn't the first time, Your Honour, that the California Supreme Court was presented with the extension of a conversion claim. In Moore v. Regents, Regents University, California, that was an earlier case and the California Supreme Court was also presented with that question. Again, should we extend conversion to, in that case, human cells, ownership of human cells? And again, because of the strict liability nature of conversion, the California Supreme Court was extremely concerned and said no, we're not going to extend that. So – Conversion doesn't require any knowledge or wrongful intent in order to make out a claim. But as Judge Smith was mentioning, Collins and others do consider conversion an intentional tort based on the intent to assert some sort of ownership or possessory interest. So aren't those things in conflict? We don't think they're in conflict, Your Honours. We understand that there are several cases which talk about conversion as an intentional tort. But if you look very carefully at what those cases are saying, what they're saying is that there has to be an intentional act as part of conversion. And that makes sense. For example, if I'm doing nothing and someone places some property, an asset on my property, on my real estate, I've done nothing. I'm passive. I haven't taken any affirmative act. That can't be conversion. And that's what the tort of conversion is about. Bailey's is another example. Someone gives you a property as a Bailey and you have rightful possession of it. There has to be a further act. Someone has to make a demand. I take it you're drawing a distinction between the intent to secure or dispose of property, which would be an element of conversion, that there's intentional conduct, versus an intent to injure, which goes to the contributory equitable contribution concept, right? Yes, Your Honour. It's a distinction between an act of exercising dominion, legal dominion over someone else's property versus the mental state. In other words, did you do the act intentionally, recklessly, negligently, or where the mental state was not even relevant? And that's what we're saying. In tort of conversion, the mental state is not even relevant. Boris says that. It's been that way since at least 1914, the case of Pogge versus Scott. Let me step back. I mean, I look at Colin, and maybe it's just because I'm an old insurance defense lawyer that I look at Colin. And I see Colin where the court was trying to determine whether this conversion of real property constitutes an occurrence or an accident covered by the insurance policy. In fact, saying, is this more like a tort or is this more like something bigger than a tort, which is somewhat similar to what we're looking at here? And they said it's pretty important to say that it is not a tort. That in fact, even though it's an intentional tort, it's more like something that isn't something the policy, the occurrence of the policy will cover. And therefore, you don't get any insurance for it when you have a conversion. And therefore, they substituted conversion out. And I know this was a court of appeals opinion, but frankly, there are a lot of court of appeals judges who I have a lot of respect for. And they're trying to determine this. Then we go to Phelps, which is another court of appeals opinion. And there they were dealing with a breakdown of damages in a jury verdict. And they said, well, if it's a negligence damage, yeah, that's apportionable. But if it's conversion, which would seem to rub against what you're arguing right here, it's not apportionable at all. That conversion and battery are not apportionable damages. So, again, these are cases that I see on the other side, and I hear you arguing the cases here. And I and I don't really disagree with your argument. I'm just saying, what do I do when I got the courts in California on different pages? And in your eyes, we that's we agree that if there is any ambiguity and it's unclear, then we should have this case certified for the for for for decision by the California Supreme Court. And I would just point out, Your Honor, that Phelps didn't deal with the issue of equitable indemnity. Phelps was dealt with the question of apportionment between a plaintiff and a defendant. It wasn't between joint tort phases. I would say this as a final point, Your Honor, so I can reserve some time. The decision of the district court cannot be correct for two additional reasons. If if the act of our client in in in exercising dominion over this stock in question was an intentional tort, and if all that was needed was an act to make it an intentional tort for purposes of equitable indemnity, then the police, the police would also have engaged in an intentional tort because they were the ones who canceled the original stock certificates of the plaintiff. And sent the new stock certificates to us, so their acts are just as intentional. So you would be presented with a situation of intentional tort visa and a co intentional tort visa, in which case this would be a very, very easy appeal because the Court of Appeal of California and the decision of Baird versus Jones has said that intentional tort visas can seek equitable indemnity from another intentional tort visa. So whichever way you look at it, whether if you look at intentionality as an act or intentionality at the mental state level, the appellate should prevail. And the final thing, final point I should make, Your Honor, is is this, that based on the ruling of the district court, it would it would mean that all all conversion tort visas are intentional tort visas. And that can't possibly be right because all these cases discuss the situation where a conversion tort visa may have been innocent, acted in good faith and so forth. But the district court's ruling here was a ruling that as a matter of law, a conversion tort visa cannot seek equitable indemnity from a from a negligent tort visa because purportedly a conversion tort visa is a an intentional tort visa. And that, as I said, that can't be right because there are lots of situations, including this situation, right, where if you look at what what the district court held, it said that there could have been an active conversion as early as 2017 when OREC sent the stock to to our client, Sun Hung Gai. At that point in 2017, all Sun Hung Gai did was receive the stock, question why it was being sent to it, alert OREC and say this is an error, you have to reverse it. So at that point, Sun Hung Gai has done nothing. And it's clearly a situation where it was if that was the active conversion, which the district court said was possible, then we hadn't done anything that would constitute intentionality. It was a good faith, innocent receipt of stock. So. So again, the district court's ruling saying that the conversion or conversion tort visas are intentional tort visas is erroneous for that reason as well. Thank you, Your Honors. Thank you.  I understand you're splitting time ten and five. So we'll put those numbers on the clock. I was just going to mention that. And good morning, Judge Smith. Good morning, Judge Wynn. Good morning, Judge Sanchez. I'm Joe McMonagle and I'm here with my partner, John Sullivan. We're from Long and Leavitt. We represent the OREC firm. And as you mentioned, Judge Wynn, I will address you for ten minutes and then Rick Smith, our colleague, will take the last five minutes. I'm sure you'll jump in, but I thought I should. Let me dive right in. Boris is a California Supreme Court decision, and it is a recent one. So our job, if we weren't to certify, is to try to predict what the California Supreme Court would do with this novel situation. And your friend on the other side is making the point that you have a clear California Supreme Court decision that says conversion is a strict liability tort that requires no wrongful intent, not even knowledge of the converted property. And it relies on more, and you have separate, clearly established authority that says strict liability tort feasors can get indemnification from other negligent tort feasors. So why isn't it clear? Even if Colin's word is somehow contradicted, it's the Supreme Court speaking here. So why isn't that clear enough for our purposes? Okay. I'll start with Boris, Judge Sanchez, that characterized conversion as a strict liability cause of action. In doing that, they were dealing with the issue of whether or not you require bad faith or knowledge or even negligence. But Boris didn't alter the essential elements of the tort of conversion. In fact, it actually recognized that conversion requires the defendant to have intentionally done the act depriving plaintiff of his or her rightful possession. That's set forth on page 1158 of the Boris decision. I don't think that helps your case, counsel. I start with the California Civil Procedure Code 875, subsection D, which basically says no right of contribution in favor of tort feasors, of any tort feasor who's intentionally injured the injured person. Right. So the intentionality there is the intent to injure. And when I go to conversion, intent to injure is not an element of the offense. So you read out the elements that's been articulated by the California Supreme Court, one being the disposition of property in a manner inconsistent with the plaintiff's property rights. So can't one commit that element without even knowing that the plaintiff's property rights? It's this particular factual scenario here. You can't intentionally dispose of somebody's property without an intent to injure that person. Yeah, but this is not the facts of this case, Your Honor. And if you focus on the period of time from 2021, which was the key period of time, SHK was notified that they – But let's not talk about the facts because we're trying to decide a pure question of law because even if – let's say even if you lose and conversion is available, that doesn't mean that that side wins. The facts then apply to see whether equitable indemnification should apply or not. But what we're dealing with right now is the pure question of law. Is the law clear enough from the Supreme Court to tell us that conversion should – that equitable indemnification should be allowed? And when you read Voris, Your Honor, it's really focused on does conversion apply to the nonpayment of wages. And it does state it's a strict liability tort, but it does also state that there is an intentional element to conversion. And I would also – Right. So let me follow up on that because that element is the defendant's disposition of property in a manner inconsistent with plaintiff's property rights. So you read that element as requiring some sort of wrongful intent or an intent to injure the plaintiff and not just an intent to dispose of property? Yes, Your Honor, and I would also refer you to – What about the next sentence that says notably absent from this formula is any element of wrongful intent or motive in California conversion is a strict liability tort? And then it cites to Moore, which as counsel was just talking about, is a case about someone having had their body cells removed for lucrative research without their consent. And one of the reasons that the court said we're not going to extend conversion to that is that even if you had consent from the physician, you still might expose others to liability who have no idea about the consent to other parties that have no knowledge about it. And so it seems broader than just limiting it to unpaid wages. Well, Your Honor, again, it didn't apply to that circumstance in Moore. They didn't find that that was a conversion. But if I could just suggest to you there's the Casey instruction, which was approved by the arm of the Supreme Court, the Judicial Council, which is Casey 2100, provides that and sets forth the elements of a conversion. And within that, it says, part two, that defendant substantially interfered with plaintiff's property by knowingly or intentionally doing the following. And they give you four possibilities. And the fourth is refusing to return the personal property after plaintiff demanded its return. That's exactly the case we have here, which has an intentional element. Within the sources and authority is the Voris case. They cite the Voris case. This Casey instruction was adopted before that time. They cite the Voris case, again, 1158, and they maintain that intentionally doing the following. That is an intentional element that's part of conversion. And I go to Judge Smith's comments that there is case law that addresses this. There's no case law. You're going to come to my comments, which I was leaving you there because I'm not sure I don't agree with my colleagues with their questions as relates to Voris. But why is it that you didn't take any position about whether I had to send this over to the Supreme Court? Well, because, Your Honor, it was raised late in the brief. Well, it would seem to me that would be something you'd absolutely go for. Well, I think you can decide this. Well, if we decided, what if I were to tell you, if I were to decide, it seems to me that Voris plus Berleski plus Regent plus Moore would leave you out in the cold. Well, Your Honor. You'd say go over to California? You know, Your Honor, I just have to, you know, set forth the law and certification is available. It's not to be employed lightly. There has to be important public policy ramifications. And this court looks...  Pardon me? You don't think there is here? I don't think it rises to the level. We have three Eastern District decisions that deal with this issue. I think Collins deals with it. There's a case cited by us. Duke deals with it. And there's also the question of trying to certify a question after the district court has ruled, which is another factor. And I just, you know, point you to Kremen versus Cohen. I mean, if it was in fact the case that Judge Smith is, you know, forecasting that we got the short end of the stick here and it's better to go to the California Supreme Court, I still have to advise you on what standard is for that certification. Okay? I feel like that's the case. And those Eastern District cases, district court interpreted whether or not a conversion defendant is allowed to seek equitable indemnity or apportionment. And each of those cases found otherwise. There is no specific case that allows for equitable indemnity for a conversion defendant. But there is case law, Phelps, VB, and these Eastern District cases that we cite on pages 19 and 20 of our brief to stand for the proposition that a conversion defendant cannot seek equitable relief through that process. Is Phelps your strongest case, do you think? Pardon me? Phelps is the case that you rely on the most? I think, Your Honor, that the three Eastern District cases. No, I mean a California case law. I would say Phelps and VB that cites Phelps. Yes, Your Honor. Okay. And I think I'm just out of my time. Thank you, Counsel. I don't know if you want me to address causation. Your Honor, if I could just have a minute to do that. All right. I'll give you a minute. Thank you. So the other basis for, well, there's two bases. The first one I'm going to address and Mr. Smith will address the second one. But the basis is causation. And the essential case against SHK is that once it was notified of the shares, were not paid and did not own them, they didn't return them. And during that period of time of 2021, if you look at Judge Rogers' decision, she put aside the 2017 period of time as not a basis for conversion. It was the 2021-2022 period of time. And if you look at that period of time, the ORIC firm had nothing to do with that period of time. Didn't do anything, wasn't asked to do anything, didn't fail to act. It's a total absence of causation. There was no evidence to support that cause of action. And SHK — Well, just a minute. Isn't it true that ORIC and SENEC issued the stock certificates? Yes, Your Honor. And they failed to process a reversal of the transfer? Yes, Your Honor. Even though they knew the transaction was on hold? They gave notice to Sci-Fi and Sci-Fi told ORIC that they were going to reverse it. Well, doesn't that create a tribal issue of fact as to whether they could have done more to do what had to be done? No, Your Honor, because the acts of conversion is the 2021-2022 period. There was no acts by SHK to assume control over the shares in 2017. They were just sent to them. They didn't try to do anything to interfere with the possession and ownership of the shares. So it was 2021. Thank you, Counsel. You're well over time, but I have to say a lot of these arguments really sound like they're to be made to a jury. Let's put five minutes on the clock for Mr. Smith. Good morning. I'm Rick Smith on behalf of SENEC Advisement. I'm going to speak to the duty of care foreseeability argument. SHK argues in reply that the duty of care foreseeability argument fails because it relies on the heavily disputed fact of whether SHK improperly refused to return the STA stock to plaintiffs in 2021. But that's not a genuine dispute. Our position is that based on the undisputed facts, there was no breach of duty as a matter of law. It's not in dispute that on October 7th, 2021, plaintiffs informed SHK that SHK was in improper possession of plaintiff shares. It's not in dispute that weeks later on November 3rd, and this is probably the most critical fact, SHK offered to pay the original 2017 price for the shares, a trade that SHK had backed out of in 2017. It's not in dispute that on that day, November 3rd, 2021, SoFi stock was trading at a market price significantly greater than the original 2017 STA price. So it can't be reasonably disputed that this proposal from SHK to buy at the original price was not a serious or reasonable offer or a serious effort to return the shares. And by doing so, SHK acknowledged that it was in wrongful possession of the shares and that it knew that. If plaintiffs had taken up this proposal, it would have resulted in a windfall for SHK on a trade that SHK had canceled. There's no universe in which plaintiffs were going to accept that offer. It's not in dispute that the SoFi stock price peaked on November 11th, 2021. There's no dispute that third-party defendants or appellees did nothing to delay or prevent the return of the shares in 2021. And finally, it's not in dispute that SHK returned the stock on January 14th, 2022, after plaintiffs filed suit against them more than three months after SHK was informed of the issue. And more than two months after SHK acknowledged that it was in wrongful possession of the shares. So SHK is trying to muddy the waters, but there's no dispute on the relevant facts. All of the roll-in factors regarding exception to the general duty of care, specifically the foreseeability of harm to plaintiff, the moral blame attached to defendant's conduct, the policy of preventing future harm, all argue against liability for appellees, particularly the foreseeability factor, which SHK acknowledges is a critical factor. And SHK's reply still doesn't offer any reasonable explanation from the record as to why the transfer was delayed for months. And specifically after SHK acknowledged it wrongfully possessed the shares in November 2021, SHK further argues that it was reasonably foreseeable that SHK would take some time to discuss with plaintiffs the best way to make plaintiffs whole. But the way to make plaintiffs whole was clear. It was to return the shares or return the monetary equivalent. And the offer to buy the shares at the STA price in 2021 in subsequent inaction for months shows SHK's bad faith. So the SHK's conduct and their attempt to negotiate a windfall wasn't something that was reasonable. It wasn't reasonable conduct, and it wasn't foreseeable as a matter of law. The fact of the matter is SHK was objectively unreasonable and unforeseeable. And in any event, SHK's and plaintiff's negligence in the return of the shares in 2021 can't create liability for appellees on an equitable indemnity claim, whether the delay in the return of the shares was the fault of SHK or the fault of plaintiffs. Either way, damages flowing from that can't be ascribed to appellees and owed to SHK. In other words, to the extent SHK tries to lay the blame for the delay in the return of the shares at the feet of plaintiff, that doesn't create equitable indemnity to SHK on the part of the appellees. Third-party – Peter Robinson Council, it sounds like you're previewing what might be a pretty good argument in front of the district court if we send it back to say that conversion – that there can be equitable indemnification for a conversion claim. I'm not hearing something that's undisputed about these things. I'm hearing what might be a pretty strong case on your end for explaining why there should not be any indemnification. Well, I would say that as a matter of law, based on the undisputed facts, there was no breach of duty here because it simply wasn't foreseeable in 2017 that SHK, a reputable securities firm that deals in the securities market all the time, would refuse for months to return shares that they knew they didn't know. So as a matter of law, we think that there was no breach of duty on the part of the appellees. Thank you, counsel. Thank you. I think you've got a little bit of time left. Thank you, Your Honors. I'll keep this mercifully short. Your Honors, Mr. McMonigle said that the critical event in terms of his causation and foreseeability arguments was that SHK, Sun Hung Gai, committed a conversion act in 2021. And that's clearly incorrect because, one, the plaintiffs themselves alleged in the complaint that conversion started as early as 2017 when the stock was sent to the defendant, Sun Hung Gai. That's the plaintiff's allegation. That's framed in this case. And secondly, it contradicts what the district court held. The district court noted this, that the act of conversion could have been a range of events. The district court said that plaintiffs allege several potential wrongful acts, namely, one, the initial 2017 stock transfer, defendant's May 2021 submission of an affidavit of lost certificate, lost stock certificate, and two or three other events. And the district court said which of these events trigger liability remains elusive. So the district court found that there was a dispute of fact about when the act of conversion happened. So for plaintiffs, for the appellees to come up here and say that there was an act of conversion in 2021, that's all the court should focus on, that's essentially trying to overturn a finding of the district court. It's a backdoor appeal because they never appealed the district court decision with respect to those holdings. Thank you, Your Honor. Thank you very much to all counsel for your arguments this morning. The matter is submitted.
judges: SMITH, NGUYEN, SANCHEZ